SOMMERVILLE, J.
This suit is based on two canceled tornado insurance policies of date July 3, 1914; one for $6,000, No. 2151, on property in Manilla village, and the other for $1,400, No. 2152, on property in Cabanash settlement, all in the state of Louisiana.
In August, 1915, a claim for $100 was made under policy No. 2151 for loss, which was paid by defendant on September 7, 1915, and on that same day defendant instructed its general agents in Louisiana, Messrs. Le Blanc & Railey, to cancel said policy. Le Blanc & Railey in turn notified Allen Mehle, the local agent of defendant company in New Orleans, of the cancellation. The latter, failing to make return in proper time, the order was repeated by Le Blanc & Railey on September 14, and on that day Mehle notified plaintiff of the cancellation of said policy. Under the terms of the policy it was continued in full force and effect during five days from the receipt by plaintiff of the notice of cancellation. Within a few days after the notice of cancellation, Allen Mehle sent the broker, who had secured the insurance, to plaintiff, and the latter, through his clerk, turned over both policies, 2151 and 2152, to said broker for cancellation, although no demand for cancellation had been made by defendant of policy 2152. Nevertheless, the defendant received and canceled the two policies; and on October 4 Mehle sent a statement to plaintiff, together with his check for $35.41. The statement was dated September 30, 1915, and it showed that $6.79 was for the return premium on policy No. 2152, and $28.62 was for the return premium on policy 2151. The check attached to the statement was dated October 4, 1915, which was received by plaintiff, deposited by him in bank to his account, and the proceeds retained by him. In the meantime, on September 29, 1915, a tornado, or tidal wave, destroyed much of the property covered by the two policies.
Plaintiff asserts that the two policies were not canceled on September 14, when he voluntarily surrendered them, volunteered to surrender policy 2152 to the agent of defendant, and the defendant canceled them, for the reason that no demand had been made by defendant for the cancellation of policy 2152, and no return premiums had been paid by the defendant to him at the time of the alleged cancellations, as was required in the following clause of the policy:
“This company reserves the right to cancel this policy or any part thereof at any time by giving notice to the insured (or any one of them), and if the premium has been fully paid, refunding the pro rata unearned portion thereof. Protection, however, under this policy, if in full force and effect, and the premium has been paid, shall continue five days from the receipt of such notice. This policy may also be canceled on request of the insured, in which event the company shall be entitled to the cus *987 tomary short-ráte premium for the time expired.” • ;
It .is contended by plaintiff that, with reference to policy 2152, that the volunteered return thereof by him to the defendant company on September 14 was simply “an opportunity offered to cancel the contract,” of which the defendant could avail itself by paying the return premium at the time of the offer.
It is quite clear that all parties, on September 14, considered that the two policies had been surrendered by plaintiff for cancellation, and that they were canceled by defendant. It is true that the return ■ premiums on the two policies were not paid on the day that the policies were surrendered and canceled; but the refund was made on October 4 by the defendant,' and accepted on that same day by plaintiff, while the loss had occurred on September 29.. The district judge was of the opinion that the two policies were canceled as of daté September 14, and were therefore not in existence on September 29, the date of the storm and loss. There was judgment in favor of defendant, and plaintiff has appealed.
[1] The position of plaintiff that the policies were in full force and effect on September 29 is untenable, in view of the evidence in the récord. It was his right to retain the policies for five days after receiving the notice of cancellation on September 14; and it may have been his right to demand the refunding of the pro rata unearned portions of the premiums before he surrendered his policies. But he voluntarily surrendered them for cancellation, and on October 4, received the unearned premiums. At that time he knew that the policies had been canceled, for the statement and the check for returned premiums were sent to him at the same time. He cashed the check, and still retains the proceeds thereof.
Again, plaintiff did not give notice in writing to defendant of any loss on September 29, as he agreed to do in the following terms:
“In the event of loss' the insured * * * shall within fifteen days' give notice of such loss in writing to this company.”
He gave no' such notice because his policies had been canceled with his consent, and he had no contracts of insurance with defendant. And he continued to be of the samé way of thinking for 58 days after the loss, When he made a demand for the first time on defendant for ■ the loss alleged to have been sustained by him on account -of the storm. This was November 22; 1915.
Defendant’s plea, in the event that the' court-should hold'that the policies' were in force on September 29, that plaintiff had forfeited all claim for such loss because of his failure to give the 15 days’ notice thereof to it, under the above clause of the contract, will not be considered in 'deciding the case.
[2] Plaintiff’s contention that he did not intend to cancel, or agree to cancel, his policies at the time that he surrendered them to defendant’s agent for cancellation, is not sustained by the evidence. He,' as a witness, testified that at the time of the cancellations, September 14, the broker told him that the policy (for $6,000) would be taken care of. And with reference to the policy on property in Oabanash, the agent testified that it, too, would be placed in some other company, or at least he would try to have it so placed. There was a clear understanding at the time of the surrender of the policies that they would be canceled; and they were therefore not in existence on September 29, at the date of the storm. This fact is further borne out by the statement and check • covering the return premiums of both policies Nos. 2151 and 2152, of date October 4, 1915.
The two policies of date July 3, 1914, continued to be the contracts between the parties until the agreement on or about September *989 14, 1915, was entered, into by them. By this later agreement the policies were canceled. The policies were returned by plaintiff on that day for cancellation, and they were received on that same day by defendant and canceled.
Plaintiff argues that the surrender of policy No. 2152, for $1,400 was made through error or mistake. We do not see how there could have been either error or mistake in view of the fact that the insurance broker discussed with plaintiff the placing of the risks in some other company at the very time that the policies were surrendered. It is true that policy No. 2152 was not demanded by defendant for cancellation, but plaintiff himself volunteered to deliver the policy for cancellation, and it was canceled. And, besides, the unearned premium of this policy, together with the unearned premium on the other policy, was paid to and received by plaintiff after the storm of September 29.
[3] Defendant pleaded waiver and estoppel, and. in support thereof quoted from the following decision in Parsons & Arbauth v. Northwestern National Ins. Co., 133 Iowa, 532, 110 N. W. 907:
Held: “That the return of the unearned premium was not a condition precedent to the cancellation of a policy by the insured so that on the surrender of a policy for cancellation before loss the insurance terminated, though no tender of the unearned premium was made until after the loss.”
And in Hopkins v. Phoenix Ins. Co., 78 Iowa, 344, 43 N. W. 197, the court said:
“The assured having acquiesced in the cancellation, though no repayment of the premium or tender was made, is estopped to set up the nonpayment.”
And, again, in Buckley v. Citizens’ Ins. Co. of Missouri, 188 N. Y. 399, 81 N. E. 165, 13 L. R. A. (N. S.) 889, where a very similar case to the one now under discussion was decided, it was held, in part,, as follows:
“The case at bar differs from the above eases, as already pointed out, by reason of the additional fact that the plaintiff had voluntarily and unconditionally surrendered his-policy immediately on receiving the notice of cancellation. We are of opinion that this action on the part of the plaintiff must be regarded in law as a waiver of his right to treat the policy as in full force and effect until the company paid or tendered to him the unearned premium. The one object of the cancellation clause is to place the policy in the custody of the insurance company absolutely and unconditionally. If the insured permits this to be done by his voluntary act, when the company gives notice of cancellation without receiving from it the unearned premium, he assents to the cancellation, but can sue for the amount due him.”
Plaintiff having voluntarily and unconditionally surrendered his policies immediately on receiving the notice of cancellation from defendant without having received from defendant the unearned premiums, he assented to the cancellations; and, as he has since received the unearned premiums on the policies, he has no claim against defendant.
The judgment appealed from is affirmed.
O’NIELL, J., dissents with regard to policy No. 2152.