MARTIN LIPMAN, as Surviving Partner, etc., Respondent, *v.* THE NIAGARA FIRE INSURANCE COMPANY, Appellant.

Defendant, in order to provide temporary insurance, pending an inquiry as to the character of the risk, or any delay in issuing the policy, signed what is called a "binding slip," which stated on whose account the insurance was made, the amount insured, the term of insurance, and the date, and that it was binding until the policy was delivered at the office of the brokers who procured it to be signed. It contained none of the conditions usually found in insurance policies. Defendant's officers having inquired as to the risk, notified plaintiff's brokers before one o'clock in the afternoon of the next day, that defendant declined it. The property described in the binding slip was destroyed by a fire which commenced about three o'clock that afternoon. Defendant's

ordinary policies contained this condition: "This insurance may be determined at any time * * * by the company on giving notice to that effect to the assured, or to the person who may have procured this insurance to be taken by the company." *Held,* that plaintiff was not entitled to recover; that the contract evidenced by the "binding slip" was one subject to the conditions contained in the ordinary policy in use by defendant; and that the notice given terminated the contract, *eo instanti,* pursuant to such condition.

*It seems,* the privilege reserved by an insurance company to terminate a policy on notice cannot be exercised under circumstances which would make it operate as a fraud on the insured, as in case of notice given pending an approaching conflagration which threatened destruction to the property insured.

*Lipman* v. *N. F. Ins. Co.* (48 Hun, 503), reversed.

(Argued May 6, 1890; decided June 3, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 2, 1888, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This was an action upon an agreement of insurance evidenced by what is termed by insurance men a "binding slip," which was in these words:

"PELL, WALLACK & CO., INSURANCES,

"55 LIBERTY STREET, NEW YORK, *Sep.* 2, 1885.

"The undersigned do insure for account of Shaped Seamless Stocking Co. amounts as specified below at 1¼ for 12 months from Sept. 2, 1885, on machinery and stock, building No. 3 (as per form, building situate Randall's Island, N. Y.). This receipt binding until policy is delivered at the office of Pell, Wallack & Co.

| Company. | Amount. | Accepted by. |
|---|---|---|
| "Niagara | $2,500 | Pollock." |

The facts, so far as material, are stated in the opinion.

*Robert W. DeForest* for appellant. Even if the intentions of the parties had not been so evident from the testimony and the pleadings, the law would have implied the contract of insurance to have been in the terms of the "usual policy" of

the company from the binding slip alone. (*DeGrove* v. *M. Ins. Co.*, 61 id. 594 ; *Van Loan* v. *F. M. F. Ins. Assn.*, 90 id. 285 ; *Hubbell* v. *P. M. Ins. Co.*, 100 id. 46 ; *Hubbard* v. *H. F. Ins. Co.*, 35 Ia. 325 ; *E. Ins. Co.* v. *Robinson*, 54 Penn. St. 256.) The notice of termination of the contract of insurance given to Pell, Wallack & Company, agents of the assured and the persons who procured the insurance to be taken by the company, terminated the contract of insurance at about noon on September third, and prior to the time of the fire. (*Grace* v. *A. C. Ins. Co.*, 109 U. S. 282 ; *Hermann* v. *N. Ins. Co.*, Id. 415.) The insurance was to be terminated without qualification " on giving notice," not on giving notice of an hour, or a day, or a week. Such was the contract. For the court to insert the word " reasonable" before the word " notice," and then to decide as a matter of law that notice at half-past twelve was not " reasonable," is in effect to make a new contract between the parties. (*McLean* v. *R. F. Ins. Co.*, 3 Lans. 421 ; *H. Ins. Co.* v. *Hick*, 65 Ill. 111.)

*Adolph L. Sanger* for respondent. The contract of insurance made by the defendant with the plaintiff was absolute. (*Post* v. *Æ. Ins. Co.*, 43 Barb. 352, 362, 363 ; Angell on Ins. § 33 ; *Ellis* v. *A. C. Ins. Co.*, 50 N. Y. 402 ; *Train* v. *H. Co.*, 62 id. 602 ; *Angell* v. *H. Ins. Co.*, 59 id. 171 ; 1 Phil. on Ins. § 16 ; *Audubon* v. *E. Co.*, 27 N. Y. 223 ; *Kelly* v. *C. Ins. Co.*, 10 Bos. 95, 100 ; *Perkins* v. *W. Ins. Co.*, 4 Cow. 645 ; *Lightbody* v. *N. A. Ins. Co.*, 23 Wend. 18, 25.) The claim made by the defendant that the plaintiff was bound by the clause in their policy relating to the issuing and cancellation of policies, is untenable. (*Stillwell* v. *M. L. Ins. Co.*, 72 N. Y. 385 ; *Hodges* v. *S. Ins. Co.*, 33 Hun, 583 ; Wood on Fire Ins. [2d ed.] § 113 ; *Pattison* v. *Mills*, 1 D. & C. 342 ; *King* v. *U. S. L. Ins. Co.*, 20 Wkly. Dig. 203 ; *Post* v. *Æ. Ins. Co.*, 43 Barb. 351 ; *Guggenheimer* v. *G. Ins. Co.*, 9 N. Y. S. R. 316 ; *Justice* v. *Lang*, 42 N. Y. 493, 497.) The brokers who procured the insurance were the agents of the plaintiff only for that specific transaction ; they were not

the agents of the plaintiff for the purpose of receiving notice of cancellation. (*Herman* v. *N. Ins. Co.*, 100 N. Y. 411, 416; *Grace* v. *A. Ins. Co.*, 109 U. S. 278; *White* v. *C. Ins. Co.*, 120 Mass. 330; *Von Wien* v. *S. Ins. Co.*, 20 J. & S. 490; *Ellis* v. *A. C. Bank*, 50 N. Y. 402.) The plaintiff could not, in any event, be bound by the alleged notice of cancellation, because such notice was not a reasonable notice. (*McLean* v. *R. F. Ins. Co.*, 3 Lans. 421; Wood on Fire Ins. § 113; *Bennett* v. *L. M. Ins. Co.*, 67 N. Y. 274; *Aymar* v. *Beers*, 7 Car. 705, 710, 711.) This action was not an action on a policy of insurance, but in the nature of an action for damages arising out of the breach of defendant's agreement to insure. (*Post* v. *Æ. Ins. Co.*, 43 Barb. 351; *Guggenheimer* v. *G. Ins. Co.*, 9 N. Y. S. R. 316; *Hubbell* v. *P. Ins. Co.*, 100 N. Y. 46.) Defendant's exceptions and requests to the court to charge are unavailable. (*Karelsein* v. *S. F. Ins. Co.*, 48 Hun, 621; *Richardson* v. *Hudhitt*, 76 N. Y. 55, 58; *Burkle* v. *Eckhart*, 1 Den. 337; *Smith* v. *Bodine*, 74 N. Y. 30; *Burnett* v. *Snyder*, 76 id. 344; 81 id. 550; *Mathers* v. *Mayberg*, 63 id. 656; *Hume* v. *Mayor*, 74 id. 268; *Boos* v. *W. M. Ins. Co.*, 64 id. 236, 242; *Burger* v. *Burger*, 111 id. 528.)

ANDREWS, J. The binding slip signed by the defendant was not a mere agreement to insure, but was a present insurance to the amount specified therein. The instrument is informal. It states on whose account the insurance is made, the property covered, the amount insured, the term of insurance and the date. But it does not specify the risk insured against, nor does it contain any conditions such as are usually found in insurance policies. The evident design of the writing as disclosed by the testimony, was to provide temporary insurance pending an inquiry by the company as to the character of the risk, or, if that was known, during any delay in issuing the policy.

The secretary of the defendant signed the binding slip upon the solicitation of Pell, Wallack & Co., insurance brokers of the plaintiff, in the afternoon of September 2, 1885. The

officers of the defendant having made inquiry as to the risk, notified the plaintiff's brokers before one o'clock of the afternoon of September third, that the defendant declined it. The property described in the binding slip was destroyed by fire in the afternoon of September third, the fire having commenced about three o'clock.

The claim on the one side is that the binding slip was a complete and perfect contract, binding the defendant according to its language, "until policy is delivered at the office of . Pell, Wallack & Co," and not terminable, therefore, by notice prior to that time, or, if so terminable, then only upon reasonable notice, which, as is claimed, was not given, nor in any event upon notice to the plaintiff's brokers, they not being agents of the plaintiff for the purpose of receiving such notice.

It is insisted on the other side that the contract evidenced by the binding slip was a contract subject to the conditions contained in the ordinary policy in use by the company, one of which contained the following clause :

" This . insurance may be determined at any time by request of the assured, or by the company on giving notice to that effect to the assured, or to the person who may have procured this insurance to be taken by this company."

The notice given on the third of September prior to the fire, terminated, as is insisted, the contract of insurance pursuant to this condition. We think there can be no doubt that the true construction of the binding slip only obligated the defendant according to the terms of the policy in ordinary use by the company. There is no other reasonable interpretation of the transaction. The binding slip was a short method of issuing a temporary policy for the convenience of all parties, to continue until the execution of the formal one. It would be unreasonable to suppose either that the brokers expected an insurance except upon the usual terms imposed by the company, or that the secretary of the company intended to insure upon any other terms. The right of an insurance company to terminate a risk is an important one. It is not reserved in terms in the binding slip and could not be exercised at all so

long as no policy should be issued, unless the condition in the policy is deemed to be incorporated therein.

Upon the plaintiff's contention the company could not cancel the risk so long as the binding slip was in force, and the only remedy of the company to get rid of the risk would be to issue the policy and then immediately cancel it. The binding slip was a mere memorandum to identify the parties to the contract, the subject-matter and the principal terms. It refers to the policy to be issued. The construction is, we think, the same as though it had expressed that the present insurance was under the terms of the usual policy of the company to be thereafter delivered.

The trial judge was of opinion that the binding slip was not a complete and independent contract of insurance, subject to no conditions, but he ruled that the obligation of the defendant was to be determined by the question, whether the condition in the defendant's policy, that the company might terminate the policy by notice to the " person who procured the insurance," was a usual one, and submitted the case to the jury on that issue. The case of *DeGrove* v. *Metropolitan Ins. Co.* (61 N. Y. 594), is, we think, a decisive authority against the view of the learned trial judge. The General Term dissented from the ruling of the trial judge on this point, and held that notice to Pell, Wallack & Co., the brokers who procured the insurance, was authorized by the condition in the policy. It, however, sustained the judgment on the ground that notice did not terminate the contract until a reasonable time had elapsed after it was given, and that the two and a half hours which intervened between the notice and the happening of the fire was not such reasonable time, and that consequently the insurance was then in force.

We think there can be no reasonable doubt upon the language of the condition that notice to the brokers was a good notice, and that if otherwise sufficient, it terminated the defendant's liability. The brokers procured the insurance. In fact their duties in respect to it had not terminated. The binding slip provided that the policy, when issued, should be

delivered at their office. The notice was given to persons to whom notice might be given by the express language of the policy. The special language of the condition in the defend. ant's policy upon this point was, it is said, inserted to meet the objection pointed out by this court in *Hermann* v. *Niagara F. Ins. Co.* (100 N. Y. 415).

It remains to consider whether under the condition the policy terminated *eo instanti* on notice by the company. There is no language which postpones the effect of notice until the lapse of a reasonable time thereafter. The rule is well settled that where a person undertakes to do an act upon notice from another, it is implied that he shall have a reasonable time after he is called upon to do the thing, or render the service, and no time for performance being specified, the law gives him a reasonable time. But where a contract fixes the time of performance, the rule of reasonable time has no application. We have been referred to no case, nor have we found any, which sanctions the doctrine that where one has assumed an obligation which is to continue until notice given to the other party, the obligation continues after notice. If in this case the premium has been paid beyond the period when notice was given, then the bare notice would not have terminated the risk. But this for the reason that the company is bound in such case, in order to terminate the policy, not only to give notice, but to refund or offer to refund the insurance premium. This is the construction placed on clauses like the one in question. The cancellation in such case only takes place on notice and return of the premium for the unexpired term. (*Van Valkenburgh* v. *Lenox Fire Ins. Co.*, 51 N. Y. 465; Wood on Fire Ins. § 106.)

The privilege reserved by the company to terminate the policy on notice, cannot be exercised under the circumstances which would make it operate as a fraud on the insured, as in case of notice given pending an approaching conflagration, threatening to destroy the property insured. (*Home Ins. Co.* v. *Heck*, 65 Ill. 111.)

In the present case no premium had been paid. The notice

was given in good faith.   There was no special emergency at the time.   It was given during business hours, in ordinary course.

The contract provides that it should be terminated on notice. We perceive no reason why the contract should not be construed according to its terms.   The parties might have provided that the risk should be carried by the company after notice for a reasonable time, to enable the insured to place it elsewhere.   But they did not do so, and even if a custom of that kind had been proved, which was not, it would have been inadmissible to change or extend the explicit language of the contract.   We think the cancellation was effected at the time of the service of the notice.   (*Mueller* v. *South Side Fire Ins. Co.*, 87 Penn. St. 399 ; *Grace* v. *Am. C. Ins. Co.*, 109 U. S. 278.)

The judgment should, therefore, be reversed and a new trial granted.

All concur.

Judgment reversed.