**GILL. et al. v. FIDELITY PHENIX FIRE INS. CO. et al.**

No. 1157.

District Court, E. D. Kentucky.

Sept. 8, 1933.

Ralph Gilbert, of Shelbyville, Ky., and Leslie W. Morris, of Frankfort, Ky., for plaintiff Gill.

T. M. Galphin, Jr., and Gordon, Laurent & Ogden, all of Louisville, Ky., and John K. Todd, of Shelbyville, Ky., for defendants.

ANDREW M. J. COCHRAN, District Judge.

This action is before me on plaintiffs' motion for new trial. The ground of it is that I erred in instructing the jury that the plaintiffs were entitled to recover $2,000 only on the policy sued on. It contained a provision in these words: "The Company reserves the right to cancel this policy or any part thereof on giving notice to that effect and refunding a ratable proportion of the premium for the unexpired term of the policy, and the assured may cancel when the premium or note or other obligation given for such premium has been actually paid in cash in which case the Company shall retain the customary short rates from the date of the policy to the time it is received at the Chicago office of the Company for such cancellation."

The policy was for $3,250, of which $3,200 was on a dwelling house and $50 on a smokehouse. These buildings were on a farm in Shelby county as I recall the evidence. It was a five-year policy, dated November 25,

1927, and expiring November 25, 1932. At noon on Friday, April 29, 1932, the defendant's agent, S. B. Moxley, at its instance, delivered to the plaintiff W. E. Gill a written indorsement reducing the amount of insurance on the dwelling house to $2,000 and his check payable to plaintiffs for $9.64, the ratable proportion of the premium on the $1,250 for the unexpired time of the policy. The reason for the reduction was that it was an unprotected risk and the occupancy of the dwelling house had been changed from the owner to a tenant. The property was destroyed by fire on the afternoon of Monday, May 2, 1932. Moxley testified that, at the time of the delivery of the indorsement and check, he explained fully the nature of the transaction to the plaintiff W. E. Gill. Gill did not contradict the testimony, at least squarely. He admitted that Moxley mentioned the matter of reduction to him, but said that he did not recall what Moxley said. He further testified that he did not read the indorsement or check until after the fire. He never cashed the check. The plaintiffs urge three reasons why this did not have the effect of reducing the policy before the fire. The principal one is that the effect of what was done on April 29, 1932, was not to reduce the policy at that time, but only to reduce it within a reasonable time thereafter, and, at the time of the fire, such time had not elapsed. They claim that the provision in the policy above quoted in so far as it relates to cancellation by the defendant should be interpreted as if it read: "The Company reserves the right to cancel the policy or any part thereof on giving notice to that effect and such cancellation shall become effective at the end of a reasonable time after the assured has been given notice of the Company's cancellation in whole or in part of the policy."

The next reason is that the defendant should have paid the refund with legal tender and not with Moxley's check. And the third is that the right to cancel any part of the policy did not include the right to reduce it.

■ There is one answer to each of these positions. It is that Moxley delivered to the plaintiff W. E. Gill the written indorsement and his check, and that Gill accepted them. There is no controversy as to this in the evidence. It is claimed that this was ineffective because Gill did not read them or understand their contents until after the fire. Moxley did and said nothing to lead him not to become acquainted with their contents.

It was solely due to his own neglect. Such being the case, plaintiffs are chargeable with knowledge of their contents. They cannot be heard to say that they did not have such knowledge, after Gill had the opportunity to read the documents and coming to an understanding of them. In the case of Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 718, 59 L. Ed. 1140, it was said: "No rational theory of contract can be made that does not hold the assured to know the contents of the instrument to which he seeks to hold the other party."

And again: "What he cannot do is to take a policy without reading it, and then, when he comes to sue at law upon the instrument, ask to have it enforced otherwise than according to its terms."

But apart from this it must be accepted that Moxley explained to Gill fully the nature of the transaction. He testifies positively to this effect. Gill's testimony as to what took place is so vague and uncertain that it cannot be accepted as a contradiction. A scintilla of evidence is not sufficient to require a case to be submitted to the jury in a federal court. There must be substantial evidence in order thereto. Gill's testimony, because of its character, was not substantial evidence against that of Moxley. It follows from what has been said that neither one of the reasons urged by plaintiffs is sound. What took place was an actual cancellation. It was not a mere notice of cancellation. What was delivered was a cancellation—a "written endorsement" it is termed, evidently to be attached to the policy, which with the delivery of the check amounted to an actual cancellation. By accepting the documents Gill acquiesced in and agreed to the cancellation. If what took place was no more than a notice of cancellation and it was not to take effect until after the lapse of a reasonable time, such time had elapsed before the fire. Plaintiffs had half a day on Friday, all of Saturday, and a half a day on Monday in which to secure additional insurance or to cancel the policy in its entirety and secure a policy in another company covering its amount. No attempt was made to do so. The acceptance of the check was a waiver of payment with legal tender. The check was good and could have been cashed immediately. If a reduction of the policy was not a cancellation of part of it, the plaintiffs by accepting the indorsement and check agreed to the reduction. But neither one of the reasons urged is sound except the second one.

The defendant had to pay the refund in legal tender if plaintiffs had demanded it. By accepting the check they waived this right.

■■■ The first reason is not sound. I do not understand plaintiffs to claim that the suggested form of the provision as to cancellation by defendant, according to their contention, is the true construction of that provision. Their position rather is that the provision is ambiguous on the question as to when the cancellation was to become effective; whether on the giving of notice or upon the lapse of a reasonable time thereafter, and that such being the case the latter construction, which is against the defendant and in favor of plaintiffs, should be adopted. But, as I conceive it, there is no ambiguity in the provision. It says plainly that the right of cancellation which is reserved is upon giving notice to that effect, i. e., that the policy or some part thereof is canceled and making the refund. What brings about cancellation is the giving of notice and the making of the refund. There is no room in the language used for the thought that the cancellation is not to take effect until the lapse of a reasonable time thereafter. To so construe the provision is to arbitrarily inject this thought into it. The rule as to construing provisions in policies of insurance is stated in Imperial Fire Insurance Co. v. County of Coos, 151 U. S. 452, 14 S. Ct. 379, 381, 38 L. Ed. 231: "When an insurance contract is so drawn as to be ambiguous, or to require interpretation, or to be fairly susceptible of two different constructions, so that reasonably intelligent men, on reading the contract, would honestly differ as to the meaning thereof, that construction will be adopted which is most favorable to the insured. But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense."

This case comes within the last of these two sentences. The word "notice" does not of itself indicate what it relates to. What it relates to is determined by what it is made to relate to. Here it is made to relate to the fact that the policy was canceled and not that it will be canceled after a reasonable time. This position is upheld by the following decisions, to wit: Lipman v. Niagara Fire Ins. Co., 121 N. Y. 454, 24 N. E. 699, 8 L. R. A. 719; Karelsen v. Sun Fire Office, 122 N. Y. 545, 25 N. E. 921; Springfield Fire & Marine Ins. Co. v. McKinnon, 59 Tex. 507; Mueller v. South Side Fire Ins. Co., 87 Pa. 399; Grace v. American Central Ins. Co., 16 Blatchf. 433, Fed. Cas. No. 5,648; Cain v. Lancashire Ins. Co., 27 U. C. Q. B. 453.

The plaintiffs cite in support of their contention 26 C. J. 139 where it is said: "Where no period of notice is prescribed in the policy, notice must be given for a reasonable time, although some authorities have held that the giving of notice in such case terminates the policy eo instanti."

It cites in support of this statement these cases, to wit: Chadbourne v. German-American Ins. Co. (C. C.) 31 F. 533; Hibernia Ins. Co. v. Blanks, 35 La. Ann. 1175.

The Louisiana case has no bearing on the question. In the federal case there is an expression in support of plaintiff's contention in the opinion, but recovery was denied because there had been no refund of the premium. The statement in C. J., therefore, is not supported by the decisions cited. The plaintiffs also rely on the decisions in the lower court in the Lipman and Karelsen Cases, reported in 48 Hun, 503, 1 N. Y. S. 384 and 48 Hun, 621, 1 N. Y. S. 387. But they were overthrown by the decisions in the appellate court. The plaintiffs state that their contention is supported by Massachusetts decisions, but none are cited, and I know of none.

As to the last reason, if a reduction of the amount of a policy is not a cancellation of a part of it, I cannot conceive what it is.

I am constrained to overrule the motion for a new trial.