COSMOPOLITAN MUTUAL INSURANCE COMPANY, Respondent-Appellant, et al., Plaintiff, *v.* LUMBERMENS MUTUAL CASUALTY COMPANY, Appellant-Respondent, et al., Defendants.

First Department, October 27, 1966.

*Arthur R. Martoccia* of counsel (*Di Fede & Martoccia* on the brief; *Emanuel Morgenbesser,* attorney), for respondent-appellant.

*Sidney A. Schwartz* of counsel (*Alexander, Ash & Schwartz,* attorneys), for appellant-respondent.

BOTEIN, P. J.  On June 19, 1958 one Sharon Higgins was injured as a result of a fall on a sidewalk adjacent to premises occupied by Riva Service Corporation as lessee of 1770 First Avenue Corporation.  She brought suit for damages against the two corporations and the City of New York.  During the pendency of this suit, respondent Cosmopolitan Mutual Insurance Company, which had issued an automobile garage liability policy to Riva, instituted the present declaratory judgment action, to which appellant Lumbermens Mutual Casualty Company, among others, was joined as a party defendant.  The object of the action was a declaration that Cosmopolitan was not bound to Riva on its policy because of fraudulent concealment by Riva and its insurance broker of material facts; but rather, that the obligation to defend Riva and to pay any judgment recovered against it by Higgins rested on Lumbermens for the reason that Lumbermens had insured Riva by a binder which had been in effect on the date of the accident.

After commencement of the declaratory judgment action the Higgins suit was settled for $70,000, of which sum the city, Cosmopolitan and Lumbermens each paid a third, the rights *inter se* of the two insurance companies being reserved for determination by the court.  Following trial of this reserved issue, the court rendered a judgment which in effect held that both

companies had been obligated to Riva — Cosmopolitan on its policy and Lumbermens on its binder; and which divided the obligation in proportion to the monetary limits of their respective insurance commitments ($50,000 for injury to one person in the case of Cosmopolitan, $100,000 in the case of Lumbermens). Each carrier appeals.

After reviewing the evidence we are satisfied that the court's rejection of Cosmopolitan's disclaimer of liability on its policy is well based. In our opinion, however, the facts relating to Lumbermens' binder exempt it from liability on that instrument.

On May 28, 1958, 1770 First Avenue Corporation sold its business of gasoline station and car wash to Riva, and leased to Riva the premises on which the business was conducted. Riva had an insurance broker, Buhler Service Corporation, which had acted for Riva in the past in obtaining insurance coverage and which had general authority to handle Riva's insurance matters, including, the testimony indicates, freedom to select the carriers. Riva's president having telephoned a Buhler employee to obtain various types of coverage appropriate to the business Riva was acquiring, Buhler on May 28, 1958 obtained a binder from Lumbermens limited to a period of 30 days from that date. On June 20, 1958 Riva notified Buhler by letter that a young girl believed to be named Higgins had suffered an accident the day before. On June 24, 1958 Buhler sent the letter to the Madison Avenue office of Lumbermens, which on June 26, 1958 acknowledged receipt. By letter dated June 24, 1958, sent from its William Street office, Lumbermens informed Buhler that '' inspection of this risk reveals it to be unacceptable from an underwriting viewpoint,'' and that the binder would terminate on July 3, 1958, a date later extended at Buhler's request to July 13.

Buhler had learned from one Giraud, a special agent and outside production man of Cosmopolitan who had been servicing Buhler's account since January, 1958, that there was an existing Cosmopolitan policy insuring 1770 First Avenue Corporation; and the court found that Giraud advised Buhler that Cosmopolitan would '' write for the new owners of the business '' if authorization could be obtained from 1770 First Avenue Corporation. At Buhler's request Riva obtained the policy and a letter from 1770 First Avenue Corporation to Cosmopolitan dated July 31, 1958, designating Buhler '' as our Brokers of record.'' Riva's president asked Buhler whether the policy afforded the protection he had requested and was told that it did. On August 8, 1958, Buhler obtained a binder from Cosmopolitan which substituted Riva as the named assured as of June 1, 1958, and on September 10, 1958 Cosmopolitan issued a new policy to Riva

effective June 1, 1958. Thus, Cosmopolitan committed itself to furnish insurance coverage for the Higgins accident although it did not make that commitment until after the accident occurred.

The controversy between the two carriers springs from the fact that evidently after Cosmopolitan's binder was issued, the Lumbermens binder was " cancelled flat "; i.e., *ab initio* and without premium. The reason for the cancellation may be gathered from the following finding, which is supported by the record: " In view of Buhler's dealings with Giraud of Cosmopolitan Buhler's Mr. Dunne spoke to Mr. Gobstein [Riva's president] and in order to save money and prevent a billing for earned premiums on New Amsterdam's binder* and on Lumbermens' binder both of said binders were cancelled flat."

As Lumbermens' binder was in effect on June 19, 1958, the date of the Higgins accident, it is Cosmopolitan's contention that the cancellation of the binder as of May 28, 1958, the date of the inception of its coverage, may not be recognized. But if the " flat " cancellation back to a date prior to the occurrence of the accident was effective, Lumbermens had no insurance in force covering the accident and should not be required to share the insurance responsibility with Cosmopolitan. We think the retroactive cancellation must be given effect. No policy of insurance having been issued, it would appear that Buhler's general or apparent authority to effect insurance coverage for Riva was broad enough to permit the substitution of Cosmopolitan's binder for Lumbermens' (*Karelsen* v. *Sun Fire Office of London,* 122 N. Y. 545; *Hammond* v. *Insurance Co. of North America,* 37 F. Supp. 674, affd. 118 F. 2d 1013; cf. *Rose Inn Corp.* v. *National Union Fire Ins. Co.,* 258 N. Y. 51). Even if this were not so, the plain implication of the finding above quoted concerning the motivation for the cancellation is that Riva desired and specifically authorized Buhler to cancel Lumbermens' binder flat.

As between Lumbermens and Riva, accordingly, there was an effective release as of May 28, 1958 of the former's insurance liability and of the latter's premium liability. Cosmopolitan contends, however, that as a matter of public policy an insurer " cannot validly or legally cancel a policy or binder of insurance, properly issued, after the occurrence of a loss or accident and with knowledge of such loss or accident." The contention rests on the assumption that such a cancellation impairs interests of

---

* Shortly following the notification by Lumbermens that it would no longer underwrite the risk a binder had been obtained from New Amsterdam Casualty Company; but this is a circumstance having little bearing on the issues in the litigation.

the injured person. Here there was substituted for the cancelled binder another which, though less in amount, proved equally sufficient to provide for the injured person's claim against the insured. Whether the contention would be sustainable in different circumstances is a question not reached.

The judgment entered on September 5, 1963 should be modified, on the law and the facts, to the extent of (1) deleting the first, third and fourth decretal paragraphs, (2) declaring that no insurance by Lumbermens was in effect on June 19, 1958, and that Lumbermens has no liability in respect of the settlement of the Higgins suit, and (3) directing judgment in favor of Lumbermens against Cosmopolitan in the sum of $23,333.33, with interest from the date said sum was advanced by Lumbermens toward such settlement; and, as so modified, affirmed, with costs and disbursements to Lumbermens.

BREITEL, RABIN and CAPOZZOLI, JJ., concur.

Judgment unanimously modified, on the law and the facts, to the extent of (1) deleting the first, third and fourth decretal paragraphs, (2) declaring that no insurance by Lumbermens was in effect on June 19, 1958, and that Lumbermens has no liability in respect of the settlement of the Higgins suit, and (3) directing judgment in favor of Lumbermens against Cosmopolitan in the sum of $23,333.33, with interest from the date said sum was advanced by Lumbermens toward such settlement; and, as so modified, affirmed, with $50 costs and disbursements to Lumbermens. Settle order on notice.